IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RICHARD REILLY, | |
| Plaintiff, | CV 21–101–M–KLD |
| v. | |
| AMTRUST NORTH AMERICA, INC. a Delaware corporation, and LAURA MILLS, | ORDER |
| Defendants. | |

This matter comes before the Court on Plaintiff Richard Reilly's motion to remand to state court for lack of subject matter jurisdiction (Doc. 4.) and Defendants AmTrust North America, Inc.'s and Laura Mills' (collectively "Defendants") motion to dismiss for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), or alternatively, for lack of personal jurisdiction under Rule 12(b)(2) (Doc. 8). Because Defendants have not met their burden of demonstrating that the amount in controversy exceeds $75,000 as required to establish diversity jurisdiction, Reilly's motion to remand is granted and Defendants' motion to dismiss is denied as moot.

//

## I.    Background

On July 31, 2020, Reilly was injured in an automobile accident caused by the negligence of AmTrust's insured. (Doc. 7, at ¶¶ 5, 15). On August 2, 2021, Reilly commenced this third-party bad faith action against AmTrust and AmTrust claims manager, Laura Mills in Montana Eleventh Judicial District Court. In Counts I through VIII, Reilly alleged claims under Montana's Unfair Claims Practices Act ("UTPA"), Mont. Code Ann. § 33-18-201(1), (4), (6), (10), (13), and (14). In Count IX, Reilly alleged a claim for punitive damages. Finally, in Counts X and XI, Reilly requested attorney fees and costs incurred in the underlying action and in bringing this bad faith action. (Doc. 7).

On September 15, 2021, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction. Later that day, Reilly filed a First Amended Complaint for the stated purpose of "clarify[ing] that the damages sought, exclusive of costs and interest, do not exceed the jurisdictional minimum for federal court." (Doc. 3, at 1). Reilly's Amended Complaint alleges the same causes of action, and is substantively identical to his original Complaint except for some additional language regarding damages. As set forth in the original Complaint, the final sentence of Counts I through VIII each requested "general and special damages for this statutory breach." (Doc. 7, at ¶¶ 53, 58, 64, 70, 74, 80, 86, 97). As set forth in the Amended Complaint, Counts I through VIII each now

specify that Reilly is seeking "general and special damages for this statutory breach in an amount not to exceed $74,900 exclusive of costs and interest." (Doc. 3, at ¶¶ 53, 58, 64, 70, 74, 80, 86, 97). Likewise, as set forth in Count IX of the original Complaint, Reilly's punitive damage claim simply requests "punitive damages, in addition to the financial harm incurred." (Doc. 7, at ¶ 104) As amended, Count IV now alleges that Reilly "is entitled to punitive damages, in addition to the financial harm incurred; but the total amount sought, including punitive damages, will not exceed $74,900 exclusive of costs and interest." (Doc. 3, at ¶ 104). Counts X and XI, which set forth Reilly's claims for attorney fees and costs, are identical in both pleadings. (Compare Doc. 7, at ¶¶ 106-113 with Doc. 3, at ¶¶ 106-113). Count X alleges that Reilly "had to incur legal work and attorney time to pursue the timely, correctly made settlement payment" and "demands the reasonable and necessarily incurred fees and costs incurred for that purpose." (Doc. 7, at ¶¶ 106-108; Doc. 3, at ¶¶ 106-108). Count XI, in turn, requests "the reasonable and necessarily incurred fees and costs incurred for the purpose of prosecuting [Defendants'] bad faith practice." (Doc. 7, at ¶113; Doc. 3, at ¶ 113).

Reilly moves to remand this case to state court pursuant to 28 U.S.C. § 1447(d) based on Defendants' failure to establish that the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332(a). It is undisputed that the parties are completely diverse. Although the parties are citizens of different states,

Reilly argues Defendants have not met their burden of demonstrating that the amount in controversy is at least $75,000 as required for the Court to have subject matter jurisdiction.

## II.    Legal Standards

Federal district courts are "courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Their jurisdictional scope is empowered by the Constitution and federal statute. *Kokkonen*, 511 U.S. at 377. "A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 132 (2005) (citation omitted). Pursuant to 28 U.S.C. § 1332, Congress "has granted district courts original jurisdiction in civil actions between citizens of different States" where the amount in controversy exceeds $75,000. *Exxon Mobil Corp. v. Allapattah Serv., Inc.*, 545 U.S. 546, 552 (2005)

The procedure for removing a civil action from state court to federal court is set forth in 28 U.S.C. § 1446. The statute requires the defendant to file a notice of removal "containing a short and plain statement of the grounds for removal" in the federal district court where the action is pending. 28 U.S.C. § 1446(a). In determining the amount in controversy, the court first looks to the allegations in the complaint. *Ibarra v. Manheim Inv. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the complaint does not specify the amount of damages sought and the plaintiff challenges the defendant's amount in controversy allegation, however, the defendant bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." *Lewis v. Verizon Commun., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (citing *Guglielmino v. McKee Foods Corp*., 506 F. 3d 696, 699 (9th Cir. 2007)).

The amount in controversy is assessed at the time of removal, meaning that the court considers "damages that are claimed at the time the case is removed by the defendant." *Chavez v. JPMorgan Chase Co.*, 888 F.3d 413, 417 (9th Cir. 2018). "[T]the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if [he] prevails." *Chavez*, 888 F.3d at 418.  If the amount in controversy requirement is satisfied at the time of removal, "any subsequent amendment to the complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction." *Chavez*, 888. F.3d at 417.

Finally, there is a presumption against removal and "any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

## III.   Discussion

Reilly maintains this case must be remanded for lack of diversity subject matter jurisdiction because his Complaint, which was the operative pleading at the time of removal, alleged less than $11,000 in compensatory damages, and Defendants have not shown that his claims for punitive damages and attorney fees are sufficient to push the amount in controversy over the $75,000 threshold. Reilly explains that he filed his post-removal Amended Complaint solely for the purpose of clarifying that the total amount in controversy is less than $75,000.

Defendants read the Complaint differently. According to Defendants, the Complaint alleged damages that could easily exceed $75,000, particularly given the number of UTPA claims pled and Reilly's request for punitive damages and attorney fees. Defendants further argue that Reilly cannot rely on the Amended Complaint to reduce the amount in controversy, and even if he could, the Amended Complaint still seeks amounts in excess of $75,000.

### A.   *Compensatory Damages*

As Defendants read it, "the Complaint did not quantify the relief sought," but alleged compensatory damages that can reasonably be calculated as exceeding

6

the jurisdictional amount. (Doc. 10, at 5). In particular, Defendants interpret the

Complaint as seeking "a daily interest loss of use of funds of approximately

$241.00, which if extended through trial, easily exceeds $75,000 ($241 x 365 days

= $87,965.00)." (Doc. 10, at 5). Based on this computation, Defendants maintain

that the compensatory damages alleged at the time of removal were sufficient to

satisfy the amount in controversy requirement for diversity jurisdiction.

Although it is not entirely clear, it appears that Defendants base their

compensatory damages calculation on the following allegations, which are

identical in both pleadings:

38.   Amtrust failed to timely distribute settlement/resolution funds, which
      constitutes bad faith practices under M.C.A. 33-18-201, et seq.

39.   Instead, they held the $662,500.00 in their own account for 50 days
      (Feb. 17 to April 8), and $220,000 for an additional 29 days (Jan. 19
      to Feb. 17).

40    Plaintiff's loss of use damages are calculated at a pre-judgment
      interest rate of 10% per annum interest gain on these funds.

41.   AmTrust's intentional and unnecessary delay in issuing payment
      required by law resulted in $10,823.29 of lost use on the withheld
      funds. That sum is calculated based on the timelines set forth in
      Paragraph 39 and the interest rate in Paragraph 40; a daily interest rate
      of $181.5068 times 50 days is $9,075.34 plus a daily interest rate of
      $60.2740 times 29 days is $1,747.946.

(Doc. 7, at 6; Doc. 3, at 8-9). Combining the $181.5068 and $60.2740 alleged in

paragraph 41, Defendants arrive at "a daily interest loss of use of funds of

approximately $241.00." (Doc. 10, at 5). Defendants then multiply $241 by 365

days, which is an apparent estimation of the time it could reasonably take for this matter to proceed to trial, thereby calculating Reilly's alleged compensatory damages as totaling $87,965. (Doc. 10, at 5).

Reilly argues Defendants' compensatory damages calculation is not supported by the plain language of the Complaint. The Court agrees. As outlined in paragraphs 39-41 of the Complaint, Reilly seeks damages for loss of use of funds for two specific time periods: (1) the 29-day period from January 19, 2021 to February 17, 2021 and (2) the 50-day period from February 17, 2021 to April 8, 2021. Reilly alleges he is entitled to $1,747.946 for the loss of use of funds during the 29-day period, and $9,075.34 for the loss of use of funds during the 50-day period. As specified in paragraph 41 of the Complaint, Reilly is thus seeking compensatory damages in the total amount of $10,823.29 for the loss of use of funds during those two time periods. (Doc. 7, at 6).

Contrary to Defendants' calculations, Reilly is not claiming $241 in daily interest on any amount and is not seeking damages for the loss of use of funds after April 8, 2021. To the extent Defendants' argument is that prejudgment interest could exceed $75,000, prejudgment interest is not included in calculating the amount in controversy. See 28 U.S.C. § 1332(a). Finally, to the extent Defendants maintain that the "volume" of Reilly's claims under the UPTA suggests he is seeking more than $75,000 in compensatory damages (Doc. 10, at 5), the Court is

not persuaded. Reilly explains, and the Complaint reflects, that he has pled "separate statutory bases for compensatory damages, but those damages are [pled] in the alternative" and he is not making "a request for eight separate awards of the same $10,823.29." (Doc. 13, at 4). As Reilly thus concedes, regardless of whether he ultimately prevails on one or more theories of liability under the UTPA, the total amount of his compensatory damages will remain the same, and will not exceed $10,823.20.[1] Accordingly, Defendants have not shown that compensatory damages alleged in the complaint are sufficient to satisfy the amount in controversy requirement for diversity jurisdiction.

B.   *Punitive Damages*

Even if compensatory damages alone are not sufficient to satisfy the amount in controversy requirement, Defendants further argue that factoring in Reilly's request for punitive damages brings the amount at issue over the jurisdictional threshold. If punitive damages are recoverable under applicable law, a request for punitive damages may be considered in determining the amount in controversy *Gibson v. Chrysler Corporation*, 261 F.3d 927, 945 (9th Cir. 2001). Reilly brings his claims under the Montana UTPA, which permits recovery of punitive damages.

---

[1] The Court notes that while the Complaint alleges violations of Mont. Code Ann. § 33-18-201(1), (4), (6), (10), (13), and (14), a third-party claimant does not have an independent cause of action under subsections (10) or (14). See Mont. Code Ann. § 33-18-242(1).

Mont. Code Ann. § 33-18-242(4). Accordingly, Reilly's request for punitive damages may be considered in determining the amount in controversy. "But 'the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met.'" *Marshall v. Safeco Insurance Company of Illinois*, 2020 WL 773420, at *5 (D. Mont. Feb. 18, 2020) (quoting *Burk v. Medical Savings Ins. Co.*, 348 F.Supp.2d 1063, 1069 (D. Ariz. 2004)). The removing defendant must present evidence that a punitive damages award will more likely than not put the total amount in controversy over the $75,000 jurisdictional threshold. *Burk*, 348 F.Supp.2d at 1069. The defendant can meet this burden by citing cases involving analogous facts in which the plaintiff was awarded punitive damages. *Marshall*, 2020 WL 773420, at *5 (citing *Burk*, 348 F.Supp.2d at 1069)).

Here, Defendants rely on the fact that Reilly requests punitive damages in an attempt to demonstrate that the amount in controversy exceeds the jurisdictional threshold, but do not cite any cases, analogous or otherwise, where punitive damages were awarded. Defendants have not presented any evidence demonstrating that the facts alleged in this case might warrant an award of punitive damages sufficient to bring the amount in controversy over the $75,000 jurisdictional threshold.

In fact, the Amended Complaint expressly clarifies otherwise and states that Reilly is not seeking more than a total of $74,900 in compensatory and punitive damages.  Specifically, Count IV of the Amended Complaint alleges that Reilly "is entitled to punitive damages, in addition to the financial harm incurred; but the total amount sought, including punitive damages, will not exceed $74,900 exclusive of costs and interest." (Doc. 3, at ¶104). The Court considers this a binding judicial admission. See *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (judicial admissions may be use in determining the amount in controversy).

Defendants contend that the post-removal Amended Complaint reduces the damages alleged in the original Complaint, which constitutes an impermissible attempt on Reilly's part to circumvent federal diversity jurisdiction. (Doc. 10, at 5). But the Court finds the Amended Complaint provides a clarification rather than a reduction of the amount in controversy.  The Amended Complaint is consistent with allegations of the original Complaint in this regard, and does not impermissibly reduce the amount of damages sought in an attempt to avoid federal jurisdiction.

Defendants have not met their burden of demonstrating by a preponderance of the evidence that an award of punitive damages would likely bring the amount in controversy above the jurisdictional threshold.

C.     *Attorney Fees*

Finally, Defendants argue that the Court should consider Reilly's request for attorney fees as part of the amount in controversy. (Doc. 19 at 5-6). Reilly's Complaint include two claims for attorney fees: one for the attorney fees incurred in pursuing the settlement in the underlying action, and one for attorney fees "incurred for the purposes of prosecuting [Defendants'] bad faith practice. (Doc. 7, at ¶¶ 106-113). The Amended Complaint contains the same two claims for attorney fees. (Doc.3, at ¶¶ 106-113). Defendants note that while Reilly specifies in the Amended Complaint that he will not seek more than $74,900 for compensatory and punitive damages, he makes clear that amount is "exclusive of costs and interest" and so does not limit his request for attorney fees. (Doc. 3, at ¶104).

A request for attorney fees may be considered as part of the amount in controversy if the substantive law of the forum state allows them to be recovered. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). In *Fritsch v. Swift Transportation Company of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held that attorney fees incurred after removal are properly included in determining whether the amount-in-controversy requirement is met. *Fritsch* relied on *Chavez*, which made clear that when assessing the amount in controversy at the time of removal, the court must include all relief to which the plaintiff is entitled if the action succeeds. *Fritsch*, 899 F.3d at 794 (citing *Chavez*,

888 F.3d at 418). *Fritsch* reasoned that "if the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are at stake in the litigation.'" *Fritsch*, 899 F.3d at 794 (quoting *Chavez*, 888 F.3d at 417)).

Importantly, however, for attorney fees to be considered as part of the amount in controversy they must be recoverable under the law of the forum state. See *Guglielmino*, 506 F.3d 700; *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9ᵗʰ Cir. 1998). This is a third-party bad faith case in which Reilly brings claims against Defendants under several subsections of Mont. Code Ann. § 33-18-201. Montana follows the well-established American Rule, which provides that a prevailing party is generally not entitled to attorney fees absent a specific contractual provision or statutory grant. *Sampson v. National Farmers Union Property and Cas. Co.*, 144 P.3d 797, 800 (Mont. 2006). The Montana Supreme Court has held that attorney fees are not properly awarded as damages in third-party common law bad faith actions, *Jacobsen v. Allstate Ins. Co.*, 215 P.3d 649, 656 (Mont. 2009) and third-party UTPA actions, *Sampson v. National Farmers Union Property and Cas. Co.*, 144 P.3d 797 (Mont. 2006). Reilly has not alleged any facts that would support application of any exception to the American Rule. Because it appears that Reilly is not entitled to attorney fees under Montana law, they are not properly considered as part of the amount in controversy.

D.    *Settlement Offer*

In his reply brief, Reilly argues the Court should consider evidence of a prior settlement offer by Defendants in determining the amount in controversy. (Doc. 13, at 9-10). Reilly attached copies of e-mail settlement communications from Defendants as an exhibit to his reply brief. (Doc. 13-1).

Defendants move to strike the parts of Reilly's brief that refer to these settlement communications pursuant to Rule 408 of the Federal Rule of Evidence. (Doc. 17). Subject to certain exceptions not applicable here, Rule 408 provides that "statement[s] made during compromise negotiations" about a claim are not admissible "either to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a).

The Court agrees that under these circumstances, Rule 408 prohibits Reilly from relying on Defendants' confidential settlement communications as evidence of the amount in controversy. Thus, the Court does not consider evidence or argument relating to Defendants' prior settlement offer in determining the amount in controversy.  Nevertheless, for the reasons outlined above, the Court concludes that Defendants have not met their burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000. This Court is therefore without diversity jurisdiction over this matter, and the case must be remanded to state court.

IV.   **Conclusion**

For the reasons discussed above,

IT IS ORDERED that:

(1) Plaintiff's Motion to Remand (Doc. 4) is GRANTED;

(2) Defendants' Motion to Dismiss (Doc. 8) is DENIED as moot without

prejudice to renew following remand to state court, and;

(3) Defendants' Motion to Strike (Doc. 17) is GRANTED.

DATED this 6th  day of December, 2021.

Kathleen L. DeSoto
United States Magistrate Judge